**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. _1:17-cv-139____

STUDENTS FOR LIFE AT COLORADO STATE UNIVERSITY, a recognized student organization at Colorado State University, and
EMILY FAULKNER,

       *Plaintiffs,*

v.

WILLIAM E. MOSHER, individually and in his official capacity as a member of the Colorado State University Board of Governors,
SCOTT C. JOHNSON, individually and in his official capacity as a member of the Colorado State University Board of Governors,
NANCY R. TUOR, individually and in her official capacity as a member of the Colorado State University Board of Governors,
D. RICO MUNN, individually and in his official capacity as a member of the Colorado State University Board of Governors,
MARK A. GUSTAFSON, individually and in his official capacity as a member of the Colorado State University Board of Governors,
JANE ROBBE RHODES, individually and in her official capacity as a member of the Colorado State University Board of Governors,
DENNIS E. FLORES, individually and in his official capacity as a member of the Colorado State University Board of Governors,
JOSEPH C. ZIMLICH, individually and in his official capacity as a member of the Colorado State University Board of Governors,
DEAN SINGLETON, individually and in his official capacity as a member of the Colorado State University Board of Governors,
ANTHONY A. FRANK, individually and in his official capacity as President of Colorado State University,
BLANCHE M. HUGHES, individually and in her official capacity as Vice President for Student Affairs at Colorado State University,
MICHAEL ELLIS, individually and in his official capacity as Assistant Vice President of Student Affairs at Colorado State University,
PAMELA NORRIS, individually and in her official capacity as Director of Student Leadership, Involvement, and Community Engagement at Colorado State University,
LANCE WRIGHT, individually and in his official capacity as Director of Campus Activities at Colorado State University,
TYRELL ALLEN, individually and in his official capacity as Diversity Grant Coordinator at Colorado State University, and
JOHN/JANE DOES 1-6, all individually and all in their official capacities as members of the

Diversity Grant Committee at Colorado State University,

    *Defendants.*

---

VERIFIED COMPLAINT

DEMAND FOR JURY TRIAL

---

Plaintiffs Students for Life at Colorado State University and Emily Faulkner, by and through counsel, and for their Complaint against the Defendants, hereby state as follows:

**INTRODUCTION**

1.    The cornerstone of higher education is the ability of students to participate in the "marketplace of ideas" on campus. In the context of providing funding to student organizations for their expressive activities, the First Amendment dictates that this marketplace cannot prefer some viewpoints to others. Indeed, public universities can collect a mandatory student activity fee only if they ensure that those funds are allocated in a viewpoint-neutral manner. Further, public universities cannot discriminate against student speech in a public forum based on content or viewpoint. In direct violation of these principles, Colorado State University ("University" or "CSU") has created a public forum for student speech through a Diversity Grant and has granted the committee that allocates these funds unbridled discretion, allowing it to favor the speech of popular groups and to exclude the speech of unpopular ones.

2.    When Plaintiff Students for Life at CSU applied for funding to host a nationally recognized speaker, Josh Brahm, to speak about the issue of abortion, University officials denied the request because they claimed that Mr. Brahm was not "entirely unbiased" and because some

2

people "won't necessarily feel affirmed in attending the event." However, despite the fact that it is impossible to find a speaker who is "entirely unbiased" and to create an event where everyone will "necessarily feel affirmed," these same officials have funded events where other viewpoints on social, political, cultural, and/or religious topics are promoted.

3.    Defendants have violated Plaintiffs' constitutional rights and caused them irreparable injury by forcing the members of Students for Life at CSU (including Ms. Faulkner) to contribute to a viewpoint-based funding forum that funds speech with which they disagree without affording them the opportunity to respond in kind; by treating Students for Life at CSU different than other organizations simply because of the content, viewpoint, and possible reaction to its message; by denying Students for Life at CSU funding for its event with Mr. Brahm; and by allocating student activity fees without any criteria or standards.

4.    This action is premised on the United States Constitution concerning the denial of Plaintiffs' fundamental rights to free speech, equal protection, and due process.  The policies and actions detailed below are challenged on their face and as applied to Plaintiffs.  Defendants' policies and actions have deprived and will continue to deprive Plaintiffs of their paramount rights and guarantees under the United States Constitution.  Each and every act of Defendants alleged herein was committed by Defendants, each and every one of them, under the color of state law and authority.

### JURISDICTION AND VENUE

5.    This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

6. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

7. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all of the Defendants reside in this district and/or all of the acts described in this Complaint occurred in this district.

## PLAINTIFFS

9. Plaintiff Students for Life at Colorado State University is an unincorporated expressive student organization comprised of Colorado State University students.

10. Students for Life at CSU is recognized as an official student organization at the University. It is a student-led, non-partisan, pro-life expressive student organization.

11. Every student member of Students for Life at CSU pays mandatory student fees at the University.

12. Students for Life at CSU is entitled to viewpoint neutral access to the Diversity Grant Speech Forum for student speech created by the University.

13. Students for Life at CSU is entitled to viewpoint neutral access to student fees allocated by the University.

14. Part of Students for Life at CSU's mission is to be an expressive student organization at the University and to protect its members' constitutional right to equal access to student organization funding.

4

15. If Students for Life at CSU succeeds in this lawsuit, it will be able to obtain viewpoint neutral access to the Diversity Grant Speech Forum for student speech and viewpoint neutral access to student fee funding.

16. Students for Life at CSU brings this suit on behalf of itself as a registered student organization at the University and on behalf of its individual student members, all of whom are denied access to the University's Diversity Grant Speech Forum and to its organizational funding mechanism because of the content and viewpoint of their speech activities.

17. Plaintiff Emily Faulkner is the President of Students for Life at CSU and a full-time, on-campus student at the University.

18. Ms. Faulkner pays the mandatory student fees at the University and has paid this fee every semester in which she has been enrolled.

19. Mandatory student fees paid by Ms. Faulkner have been and will be allocated to student groups for causes to which she objects, including advocacy for the right to abortion and against her own pro-life views.

20. Ms. Faulkner is entitled to the viewpoint neutral distribution of the mandatory student fees she has been and will be required to pay or to the repayment of fees she has paid. In addition, she cannot constitutionally be compelled to pay into a viewpoint discriminatory funding system.

#### DEFENDANTS

21. Defendants William E. Mosher, Scott C. Johnson, Nancy R. Tuor, D. Rico Munn, Mark A. Gustafson, Jane Robbe Rhodes, Dennis E. Flores, Joseph C. Zimlich, and Dean Singleton are, and were at all times relevant to this Complaint, voting members of the Colorado State University

Board of Governors (herein collectively, "Board Defendants"), a public university organized and existing under the laws of Colorado.

22.   The Board Defendants are responsible for, among other things, the adoption and authorization of policies that govern students at the University, including the Student Fee Policy and Diversity Grant Policy and related procedures challenged herein, and their application to Plaintiffs.

23.   The Board Defendants are responsible for enactment, amendment, and repeal of Board of Governors' policies that govern the creation of forums for student speech, including the Diversity Grant Policy, and policies that govern collection and allocation of mandatory student fees at the University, including the Student Fee Policy.

24.   The Board Defendants acquiesce in, sanction, and support the actions of all Defendants, including the enforcement of the Diversity Grant Policy and related procedures regarding the creation of public forums for student speech.

25.   The Board Defendants acquiesce in, sanction, and support the actions of all Defendants, including the enforcement of the Student Fee Policy and related procedures regarding allocation of mandatory student fees to recognized student organizations.

26.   The Board Defendants participate in the allocation of student fees by setting the amount of mandatory fees that the University will collect each year and allocating those mandatory fees to be used by the various departments of the University, including for distribution to student organizations.

27.   Each Board Defendant is sued in his or her official and individual capacities.

28.    Defendant Anthony A. Frank is, and was at all times relevant to this Complaint, the President of Colorado State University, a public university organized and existing under the laws of the State of Colorado.

29.    Defendant Frank is responsible for the enactment and enforcement of University policies, including the Student Fee Policy and Diversity Grant Policy and related procedures challenged herein and their application to Students for Life in denying it Diversity Grant funding.

30.    As president of the University, Defendant Frank annually recommends to the Board Defendants the amount of mandatory student fees and the allocation of student fee revenues which may be approved, rejected, or modified by the Board Defendants.

31.    As president of the University, Defendant Frank possesses the authority to change and enforce the Student Fee Policy and related procedures challenged herein, including those policies and actions of all University officials and the Diversity Grant Committee, which require all students, including Ms. Faulkner, to pay student fees as a condition of enrollment.

32.    As president of the University, Defendant Frank possesses the authority to change and enforce the Diversity Grant Policy, and related procedures challenged herein which has created a public forum for student speech that allows University administrators to discriminate against student speech based on its content and viewpoint, including those policies and actions of all University officials and the Diversity Grant Committee.

33.    Defendant Frank has enforced the Student Fee Policy and Diversity Grant Policy in a viewpoint discriminatory manner because he has not instructed University officials, the other defendants, or the Diversity Grant Committee to change or alter these policies and related procedures to comply with constitutional mandates.

7

34.    As president of the University, Defendant Frank has the authority to review, approve, or reject the funding decisions of all University officials, the other defendants, and the Diversity Grant Committee.

35.    Defendant Frank has enforced the Student Fee Policy and Diversity Grant Policy in a viewpoint discriminatory manner because he has not overturned the denial of funding to Students for Life made by the Diversity Grant Committee.

36.    Defendant Frank has enforced the Student Fee Policy and Diversity Grant Policy in a viewpoint discriminatory manner because he has failed to stop University officials, including the Diversity Grant Committee, from requiring Ms. Faulkner to pay mandatory student fees pursuant to the Student Fee Policy which allows Defendants to allocate student fees in a content-based and viewpoint-based manner.

37.    Defendant Frank has enforced the Diversity Grant Policy in a viewpoint discriminatory manner because he has failed to stop University officials, including the Diversity Grant Committee, from allocating Diversity Grant funding in a content- and viewpoint-discriminatory manner, including against Students for Life.

38.    Defendant Frank is sued in his official and individual capacities.

39.    Defendant Blanche M. Hughes is, and was at all times relevant to this Complaint, Vice President for Student Affairs at Colorado State University, a public university organized and existing under the laws of the State of Colorado.

40.    Defendant Hughes is responsible for administration and policymaking for the University, including the Student Fee Policy and related procedures challenged herein which require all students, including Ms. Faulkner, to pay student fees as a condition of enrollment.

8

41.     Defendant Hughes is responsible for administration and policymaking for the University, including the Diversity Grant Policy and related procedures challenged herein which has created a public forum for student speech that allows University administrators to discriminate against student speech based on its content and viewpoint.

42.     Defendant Hughes is responsible for the enforcement of University policies, including the Student Fee Policy and Diversity Grant Policy and related procedures challenged herein that were applied to Students for Life in denying its application for a Diversity Grant and required Ms. Faulkner to pay mandatory student fees pursuant to a policy that allows University administrators to discriminate in the allocation of funds based on the content and viewpoint of student speech.

43.     Defendant Hughes is responsible for overseeing the University's Campus Activities office and Student Leadership, Involvement and Community Engagement office and creating, reviewing, changing, authorizing, and enforcing the policies of those offices, including the Diversity Grant Policy.

44.     Defendant Hughes has enforced the Student Fee Policy and Diversity Grant Policy in a viewpoint discriminatory manner because she has failed to stop University officials, including the other defendants, the Campus Activities office, the Student Leadership, Involvement and Community Engagement office, and the Diversity Grant Committee, from allocating Diversity Grants in a content- and viewpoint-discriminatory manner, including denying funding to Students for Life.

45.     Defendant Hughes possesses the authority to change and enforce the Diversity Grant Policy and procedures challenged herein, including those of the Diversity Grant Committee.

46.    Defendant Hughes possesses the authority to instruct the Diversity Grant Committee to change the Diversity Grant Policy and related procedures challenged herein.

47.    Defendant Hughes is sued in her official and individual capacities.

48.    Defendant Michael Ellis is, and was at all times relevant to this Complaint, Assistant Vice President for Student Affairs and Executive Director of the Lory Student Center at Colorado State University, a public university organized and existing under the laws of the State of Colorado.

49.    Defendant Ellis is responsible for administration and policymaking for the University, including the Student Fee Policy and related procedures challenged herein which require all students, including Ms. Faulkner, to pay student fees as a condition of enrollment.

50.    Defendant Ellis is responsible for administration and policymaking for the University, including the Diversity Grant Policy and related procedures challenged herein which has created a public forum for student speech that allows University administrators to discriminate against student speech based on its content and viewpoint.

51.    Defendant Ellis is responsible for the enforcement of University policies, including the Student Fee Policy and Diversity Grant Policy and related procedures challenged herein that were applied to Students for Life in denying its application for student fee funding and that required Ms. Faulkner to pay mandatory student fees pursuant to a policy that allowed University administrators to discriminate in the allocation of funds based on the content and viewpoint of student speech.

52.    Defendant Ellis enforced the Student Fee Policy and Diversity Grant Policy in a viewpoint discriminatory manner because he has failed to stop University officials, including the other defendants, from collecting mandatory student fees pursuant to a policy that allows

10

University administrators to discriminate in the allocation of funds based on the content and viewpoint of student speech.

53.    Defendant Ellis, under the direction of Defendants Hughes and Frank, instructs the Diversity Grant Committee when to create, review, change, authorize, and enforce student fee funding policies and procedures.

54.    Defendant Ellis enforced the Student Fee Policy and Diversity Grant Policy in a viewpoint discriminatory manner because he has failed to stop University officials, including the other defendants, the Campus Activities office, the Student Leadership, Involvement and Community Engagement office, and Diversity Grant Committee, from allocating Diversity Grants in a content- and viewpoint-discriminatory manner, including denying funding to Students for Life.

55.    Defendant Ellis possesses the authority to change and enforce the Student Fee Policy, Diversity Grant Policy, and related procedures challenged herein, including those of the Diversity Grant Committee.

56.    Defendant Ellis is sued in his official and individual capacities.

57.    Defendant Pamela Norris is, and was at all times relevant to this Complaint, Director of Student Leadership, Involvement & Community Engagement at Colorado State University, a public university organized and existing under the laws of the State of Colorado.

58.    Defendant Norris is responsible for administration and policymaking for the University, including the Student Fee Policy and related procedures challenged herein which require all students, including Ms. Faulkner, to pay student fees as a condition of enrollment.

11

59.    Defendant Norris is responsible for administration and policymaking for the University, including the Diversity Grant Policy and related procedures challenged herein which has created a public forum for student speech that allows University administrators to discriminate against student speech based on its content and viewpoint.

60.    Defendant Norris is responsible for the enforcement of University policies, including the Student Fee Policy, Diversity Grant Policy, and related procedures challenged herein that were applied to Students for Life in denying its application for a Diversity Grant and that required Ms. Faulkner to pay mandatory student fees pursuant to a policy that allowed University administrators to discriminate in the allocation of funds based on the content and viewpoint of student speech.

61.    Defendant Norris, under the direction of Defendants Ellis, Hughes, and Frank, instructs the Diversity Grant Committee when to create, review, change, authorize, and enforce the Diversity Grant Policy and related procedures.

62.    Defendant Norris enforced the Student Fee Policy and Diversity Grant Policy in a viewpoint discriminatory manner because she has failed to stop University officials, including the other defendants, the Student Leadership, Involvement and Community Engagement office, and Diversity Grant Committee, from allocating funds in a content- and viewpoint-discriminatory manner, including denying funding to Students for Life.

63.    Defendant Norris possesses the authority to change and enforce the Student Fee Policy, Diversity Grant Policy, and related procedures challenged herein, including those of the Diversity Grant Committee.

64.    Defendant Norris is sued both in her individual and official capacities.

12

65. Defendant Lance Wright is, and was at all times relevant to this Complaint, Director of Campus Activities at Colorado State University, a public university organized and existing under the laws of the State of Colorado.

66. Defendant Wright is responsible for administration and policymaking for the University, including the Student Fee Policy and related procedures challenged herein which require all students, including Ms. Faulkner, to pay student fees as a condition of enrollment.

67. Defendant Wright is responsible for administration and policymaking for the University, including the Diversity Grant Policy and related procedures challenged herein which has created a public forum for student speech that allows University administrators to discriminate against student speech based on its content and viewpoint.

68. Defendant Wright is responsible for the enforcement of University policies, including the Student Fee Policy, Diversity Grant Policy, and related procedures challenged herein that were applied to Students for Life in denying its application for a Diversity Grant and that required Ms. Faulkner to pay mandatory student fees pursuant to a policy that allowed University administrators to discriminate in the allocation of funds based on the content and viewpoint of student speech.

69. Defendant Wright, under the direction of Defendants Ellis, Hughes, and Frank, instructs the Diversity Grant Committee when to create, review, change, authorize, and enforce the Diversity Grant Policy and related procedures.

70. Defendant Wright enforced the Student Fee Policy and Diversity Grant Policy in a viewpoint discriminatory manner because he has failed to stop University officials, including the other defendants, the Campus Activities office, and Diversity Grant Committee, from allocating

13

funds in a content- and viewpoint-discriminatory manner, including denying funding to Students for Life.

71.    Defendant Wright possesses the authority to change and enforce the Student Fee Policy, Diversity Grant Policy, and related procedures challenged herein, including those of the Diversity Grant Committee.

72.    Defendant Wright is sued both in his individual and official capacities.

73.    Defendant Tyrell Allen is, and was at all times relevant to this Complaint, Campus Activities Program Coordinator at Colorado State University, a public university organized and existing under the laws of the State of Colorado.

74.    Defendant Allen is responsible for administration and policymaking for the University, including the Student Fee Policy and related procedures challenged herein which require all students, including Ms. Faulkner, to pay student fees as a condition of enrollment.

75.    Defendant Allen is responsible for administration and policymaking for the University, including the Diversity Grant Policy and related procedures challenged herein which has created a public forum for student speech that allows University administrators to discriminate against student speech based on its content and viewpoint.

76.    Defendant Allen is responsible for the enforcement of University policies, including the Student Fee Policy, Diversity Grant Policy, and related procedures challenged herein that were applied to Students for Life in denying its application for a Diversity Grant and that required Ms. Faulkner to pay mandatory student fees pursuant to a policy that allowed University administrators to discriminate in the allocation of funds based on the content and viewpoint of student speech.

77.    Defendant Allen, under the direction of Defendants Wright, Ellis, Hughes, and Frank, instructs the Diversity Grant Committee when to create, review, change, authorize, and enforce the Diversity Grant Policy and related procedures.

78.    Defendant Allen enforced the Student Fee Policy and Diversity Grant Policy in a viewpoint discriminatory manner because he has failed to stop University officials, including the other defendants, the Campus Activities office, and Diversity Grant Committee, from allocating funds in a content- and viewpoint-discriminatory manner, including denying funding to Students for Life.

79.    Defendant Allen possesses the authority to change and enforce the Student Fee Policy, Diversity Grant Policy, and related procedures challenged herein, including those of the Diversity Grant Committee.

80.    Defendant Allen applied the Student Fee Policy and Diversity Grant Policy in a viewpoint discriminatory manner because he participated in the review of the application for the Diversity Grant made by Students for Life and denied the application based on the Student Fee Policy and the Diversity Grant Policy.

81.    Defendant Allen is sued both in his individual and official capacities.

82.    Defendants John/Jane Does 1–6 are, and were at all times relevant to this Complaint, the members of the Diversity Grant Committee (hereinafter "DGC Defendants"). These individuals will be named once their names are discovered.

83.    The DGC Defendants have the authority assigned them by the other Defendants herein, the Student Fee Policy, and the Diversity Grant Policy to review funding applications and make funding decisions to student groups applying for Diversity Grants.

15

84.    The DGC Defendants applied the Student Fee Policy and Diversity Grant Policy in a viewpoint discriminatory manner because they reviewed the application for a Diversity Grant made by Students for Life at Colorado State University and denied the application because they believed the speaker's viewpoint to be "biased" in favor of the pro-life view and because they believed that some people would disapprove of (or not "feel affirmed" by) the speaker's pro-life views.

85.    The DGC Defendants are sued in both their official and individual capacities.

## FACTUAL BACKGROUND

### I.    OVERVIEW OF DEFENDANTS' STUDENT ORGANIZATION FUNDING SYSTEM

86.    Colorado State University is a public university organized and existing under the laws of the State of Colorado, and receives funding from the State of Colorado in order to operate.

87.    The Board Defendants govern the University through bylaws, policies, procedures, and ordinances.

88.    The Board Defendants derive their authority from Article VIII, § 5 of the Constitution of the State of Colorado and state law.

89.    The University operates a forum of recognized student organizations.

90.    Two of the benefits of becoming a recognized student organization is eligibility to receive funding from the funds collected through mandatory student fees and the ability to participate in the Diversity Grant Speech Forum.

## II.    DEFENDANTS' UNCONSTITUTIONAL STUDENT FEE POLICY

91.    Defendants impose mandatory student fees on all University students pursuant to the Institutional Student Fee Plan and Policy (the "Student Fee Policy"). A true and correct copy of the Student Fee Policy is attached as Exhibit 1 to this Complaint.

92.    But the Student Fee Policy violates the First and Fourteenth Amendment rights of the University's students because it grants University administrators unbridled discretion to discriminate in the allocation of funds based on the content and viewpoint of student speech.

93.    The Student Fee Policy defines a student fee as "[a]ny amount, other than tuition, that is assessed to all individual students as a condition of enrollment in the university." Ex. 1 § 1.

94.    Pursuant to the Student Fee Policy, mandatory student fees may be used for academic and nonacademic purposes, including funding registered student organizations and funding student centers and recreational facilities. Ex. 1 § 1.

95.    Pursuant to the Student Fee Policy, Defendant Frank annually determines the proposed amount of mandatory student fees and the proposed allocation of the mandatory student fees. Ex. 1 § 3.a.

96.    Pursuant to the Student Fee Policy, Defendant Frank then submits his recommendation for approval to the Board Defendants as to the amount and proposed allocation of mandatory student fees. Ex. 1 § 3.a.

97.    Pursuant to the Student Fee Policy, the Board Defendants possess the ultimate discretion and authority to approve, reject, or modify Defendant Frank's annual proposal for the amount of mandatory student fees that are payable by students at the University. Ex. 1 § 3.e.

98.    Pursuant to the Student Fee Policy, payment of the student fees by students is mandatory.

99.    More than 33,000 students are attending the University during the 2016–2017 academic year.

100.    During the 2016–2017 academic year, the University collected more than $55 million in total student fees, and each full-time, on-campus student paid $831.89 per semester in mandatory student fees.  Excerpts from the University's website discussing student fees are attached as Exhibit 2 to this Complaint, and a copy of the General Fee Schedule is attached as Exhibit 3 to this Complaint.

101.    Pursuant to the Student Fee Policy, upon information and belief, Ms. Faulkner has paid or will pay in excess of $6,000 in mandatory student fees in her eight semesters at the University.

102.    Defendants allocate the mandatory student fees among the various University departments that are entitled to receive funding through student fees.

103.    Pursuant to the Student Fee Policy, the Lory Student Center ("LSC") is funded through mandatory student fees and is responsible for allocating the Lory Student Center Fees.

104.    Pursuant to the Student Fee Policy, the Lory Student Center Fees are a portion of the total student fee, and for 2016–2017, these fees amount to $178.28 for each full-time, on-campus student per semester. *See* Ex. 3.

105.    The LSC is the community center for all members of the University including students, faculty, staff, and visitors. The LSC's stated purposes are (i) "to enhance the academic climate by extending the learning process for the individual beyond the classroom, laboratory, and library, and (ii) to provide and develop an environment and programs pertinent to the intellectual, social, cultural, recreational, and personal development of individuals and groups within the campus

18

community." Excerpts from the University's website discussing the purpose of the LSC are attached as Exhibit 4 to this Complaint.

106. The LSC contributes directly to the educational mission of the University by providing encouragement and opportunities for participation in educational, cultural, and recreational activities. Ex. 4.

107. The LSC is the "gathering place for the campus community offering vibrant social, educational, recreational, and cultural activities that stimulate discussion and debate." Ex. 4.

108. Pursuant to the Student Fee Policy, the Campus Activities Office is funded through mandatory student fees and is responsible for allocating the Campus Activities Fee which is a portion of the total student fee. *See* Ex. 3.

109. The mission of Campus Activities is to "create incredible experiences that reach all students through programming and services." Excerpts from the University's website discussing the purpose of Campus Activities are attached as Exhibit 5 to this Complaint.

110. Pursuant to the Student Fee Policy, the Student Leadership, Involvement, and Community Engagement ("SLiCE") is funded through mandatory student fees and is responsible for allocating the Student Leadership, Involvement and Community Engagement Fee.

111. Pursuant to the Student Fee Policy, the Student Leadership, Involvement and Community Engagement Fee is a portion of the total student fee, and for 2016–17, this fee amounts to $18.16 for each full-time, on-campus student per semester. Excerpts from the University's website showing the student fees going to SLiCE are attached as Exhibit 6 to this Complaint.

112. The purpose of the Student Leadership, Involvement and Community Engagement ("SLiCE") office is to bring together student organizations, student leaders and student volunteers

19

to increase student involvement and enrich their academic and social experience at the University. Excerpts from the University's website discussing the purpose of SLiCE are attached as Exhibit 7 to this Complaint.

113. Pursuant to the Student Fee Policy, the Board Defendants and Defendants Frank and Hughes delegate to LSC, SLiCE, and Campus Activities the responsibility to utilize the student fees they are allocated to carry out their mission. *See* Ex. 1 § 3.c.

114. The Student Fee Policy does not contain any provision requiring that any portion of the mandatory student fee that is used to fund the speech of students or student organizations must be allocated in a content and viewpoint neutral manner.

115. The Student Fee Policy does not contain any objective criteria, factors, or standards to guide University administrators when allocating the portion of the mandatory student fee that is used to fund the speech of students or student organizations.

## III.   DEFENDANTS' UNCONSTITUTIONAL DIVERSITY GRANT POLICY

116. The LSC, SLiCE, and Campus Activities utilize part of the mandatory student fees to fund the LSC Diversity Grant (the "Diversity Grant"). Excerpts from the University's website outlining the Diversity Grant Policy are attached as Exhibit 8 to this Complaint.

117. But the Diversity Grant Policy violates the First and Fourteenth Amendment rights of the University's students because it grants University administrators unbridled discretion to discriminate in the allocation of funds based on the content and viewpoint of student speech.

118. As detailed in subsequent paragraphs, Plaintiffs challenge, facially and as-applied, the provisions of Defendants' Diversity Grant Policy that:

- Grant Defendants unbridled discretion to deny a Diversity Grant even if the application satisfies the five criteria set forth in the Policy.

- Grant Defendants unbridled discretion to determine whether proposed student speech "will enhance the educational and cultural aspects of the CSU community and/or raise awareness of differing perspectives."

- Grant Defendants unbridled discretion to determine whether proposed student speech is "unbiased."

- Grant Defendants unbridled discretion to determine whether proposed student speech will make all students "feel affirmed in attending the event."

119. Pursuant to the Diversity Grant Policy, the Diversity Grant is "designed to support programs that enhance the educational and cultural aspects of the university community and raise the awareness of differing perspectives." Ex. 8.

120. Pursuant to the Diversity Grant Policy, the Diversity Grant is administered by the LSC Diversity Grant Committee comprised of Defendants John/Jane Does 1–6, who are students and staff members from the Lory Center Governing Board, SLiCE, Campus Activities, and the general student body. Ex. 8.

121. Pursuant to the Diversity Grant Policy, Diversity Grants may be awarded to a registered student organization with the following conditions: (1) each grant shall not exceed $600 per semester per organization; (2) funds can be used for direct program support such as marketing, room rental, tech fees, or supplies; (3) programs must take place on-campus during the current academic year, preferably in the LSC; (4) programs must be open to the public with no admission

charge to fee-paying University students; and (5) organizations must acknowledge the Diversity Grant in all their publicity material. Ex. 8.

122. Pursuant to the Diversity Grant Policy, a student organization does not automatically receive a Diversity Grant if it satisfies all the criteria set forth in the Diversity Grant Policy. The LSC Diversity Grant Committee possesses the unbridled discretion to deny an application for a Diversity Grant even if the application satisfies all of the criteria in the policy.

123. Pursuant to the Diversity Grant Policy, to apply for the Diversity Grant, student organizations must submit an application by the application deadline. Ex.8.

124. Pursuant to the Diversity Grant Policy, each of the applications is then considered by the LSC Diversity Grant Committee during a funding session. Ex. 8.

125. Pursuant to the Diversity Grant Policy, each applicant is required to give a four to five minute oral presentation to the LSC Diversity Grant Committee which should include the purpose of the program and how the program "will enhance the educational and cultural aspects of the CSU community and/or raise awareness of differing perspectives." Ex. 8.

126. The Diversity Grant Policy does not contain any definitions or objective standards to guide the LSC Diversity Grant Committee in determining whether a particular program "will enhance the educational and cultural aspects of the CSU community and/or raise awareness of differing perspectives."

127. The Diversity Grant Policy does not contain any provision requiring that the grant must be allocated in a content and viewpoint neutral manner.

22

128.  The Diversity Grant Policy does not contain any objective criteria, factors, or standards to guide the LSC Diversity Grant Committee in determining whether to grant the application of any student organization.

129.  No additional published standards exist to guide the discretion of the DGC in determining whether a group should receive funding and at what level.

130.  Upon information and belief, other than the Diversity Grant Policy, Defendants possess no other policies outlining the factors, criteria, and standards to guide the discretion of DGC members when determining whether a group should receive funding and at what level.

131.  Pursuant to the unbridled discretion granted to them in the Diversity Grant Policy, the LSC Diversity Grant Committee, which consists of the DGC Defendants, applies the policy in a content and viewpoint discriminatory manner by requiring that the speech be "unbiased" and that it must make all attendees "feel affirmed."

132.  The meetings of the DGC and the oral presentations by applicants are not recorded.

133.  Pursuant to the Diversity Grant Policy, Defendants have created a public forum for student speech (the "Diversity Grant Speech Forum").

134.  The Board Defendants and Defendants Frank, Hughes, Ellis, Norris, Wright and Allen have the authority to establish the terms of the Student Fee Policy and the Diversity Grant Policy and to instruct the LSC Diversity Grant Committee to follow those policies.

135.   Pursuant to the Diversity Grant Policy, the DGC Defendants have discretion over the specific allocation of funds that are distributed to recognized student organizations through the Diversity Grant, and thus have control over the content and viewpoint of the speech in the Diversity Grant Speech Forum.

23

136. As a recognized student organization at the University, Students for Life at CSU is entitled to participate in the Diversity Grant Speech Forum for student organizations that the University created through the Diversity Grant by applying for funding.

137. The Diversity Grant funding is provided on a reimbursement basis.

138. Pursuant to the Student Fee Policy and Diversity Grant Policy, the Board Defendants and Defendants Frank, Hughes, Ellis, Norris, Wright, and Allen have delegated a portion of that process to the LSC Diversity Grant Committee.

139. Pursuant to the Diversity Grant Policy, the Diversity Grant Committee allocates funds, including those derived from mandatory student fees, to student organizations based on authority vested in them by the Defendants.

140. Pursuant to the Diversity Grant Policy, there is no appeal process if a student organization's funding application for a Diversity Grant is denied by the LSC Diversity Grant Committee.

## IV. BACKGROUND ON STUDENTS FOR LIFE AT CSU

141. Students for Life at CSU is a nonprofit, student-led expressive student group at the University and is a recognized student organization.

142. Students for Life at CSU is founded upon its view that all human life from the point of conception until natural death is sacred and has inherent dignity.

143. The purpose of Students for Life at CSU is to sustain and advocate for this dignity peacefully through the promotion and defense of the culture of life.

144. Students for Life at CSU expresses its pro-life message on the University's campus through a variety of means including flyers, signs, peaceful demonstrations, hosting tables with information, inviting speakers to campus, and talking with fellow students about its pro-life views.

145. When engaging in these expressive activities, Students for Life at CSU and its members discuss political, religious, social, cultural, and moral issues, events, and ideas.

146. For example, in this past year, Students for Life at CSU brought the following pro-life speakers to campus: Catherine Davis, Dr. Alveda King, and Josh Brahm.

147. Students for Life at CSU intends to engage in these types of expressive activities during the remainder of the 2016–2017 academic year and subsequent years thereafter. It wants to apply for Diversity Grants to offset the cost of providing these educational opportunities for the CSU campus but has been and will be denied such funding due to its message.

## V. DEFENDANTS' UNCONSTITUTIONAL DENIAL OF STUDENTS FOR LIFE AT CSU'S FUNDING REQUEST

148. As required by the Diversity Grant Policy, in September 2016, Students for Life submitted a timely application for a Diversity Grant to host Josh Brahm from the Equal Rights Institute to speak on the topic of abortion and bodily rights.

149. According to the application, the title of Mr. Brahm's talk was "Bodily Rights: The Ultimate Abortion Argument."

150. In the application, Students for Life at CSU described the purpose of the event as follows: to educate students on the differing perspectives surrounding the abortion argument and encourage students to take a stance on the issue.

151. The application indicated that the program was scheduled to be held on October 10, 2016, on campus in Clark A 203.

152.  Pursuant to the Diversity Grant Policy, after the application was submitted, Ms. Faulkner, President of Students for Life at CSU, gave an oral presentation to the DGC Defendants which provided further explanation about the proposed event and answered questions from the Committee.

153.  During the oral presentation, the DGC Defendants asked Ms. Faulkner several questions regarding the proposed content of Mr. Brahm's speech.

154.  Pursuant to the Diversity Grant Policy, neither Ms. Faulkner's oral presentation nor the questions from the Committee were recorded.

155.  On September 23, 2016, Ms. Faulkner received an e-mail from Defendant Allen denying Students for Life at CSU's request for a Diversity Grant pursuant to the authority granted in the Diversity Grant Policy. A true and correct copy of the e-mail is attached as Exhibit 9 to this Complaint.

156.  In his e-mail, Defendant Allen stated that the Diversity Grant Committee denied the application because the "speaker's content doesn't appear to be entirely unbiased as it addresses the topic of abortion" and the "committee worries that folks from varying sides of the issue won't necessarily feel affirmed in attending the event."

157.  Pursuant to the Diversity Grant Policy, Students for Life at CSU could not appeal the denial of funding by the LSC Diversity Grant Committee.

158.  Pursuant to the Diversity Grant Policy, the LSC Diversity Grant Committee denied Students for Life at CSU's request for funding for Mr. Brahm's speech.

159.  Pursuant to the Diversity Grant Policy, the DGC Defendants denied Students for Life at CSU's request for funding because they did not want to fund the viewpoint Students for Life seeks to express.

160.  Pursuant to the Diversity Grant Policy, the DGC Defendants denied Students for Life at CSU's request for funding because they feared that some listeners might find Mr. Brahm's and Students for Life at CSU's expression offensive or discomforting.

161.  Pursuant to the Diversity Grant Policy, the DGC Defendants denied Students for Life at CSU's request for funding thereby discriminating against the content and viewpoint intended to be expressed by Students for Life at CSU and its invited speaker.

162.  Upon information and belief, pursuant to the Diversity Grant Policy, Defendants have awarded the Diversity Grant for other student organizations' events that did not include an "unbiased" presentation or that did not allow all students to feel "affirmed" in attending the event.

163.  On October 10, 2016, Students for Life at CSU successfully hosted Mr. Brahm as he spoke about "Bodily Rights: The Ultimate Abortion Argument."

164.  Students for Life at CSU had to raise the $600 it otherwise could have received from the Diversity Grant Committee, but for the content and viewpoint of its message.

165.  Students for Life at CSU plans to apply for student fee funding through a Diversity Grant immediately for its upcoming events on campus.

166.  Students for Life at CSU is currently working on plans to bring at least two speakers to campus in the spring of 2017 and wants to apply for funding through a Diversity Grant for those events.

167.  For example, Students for Life at CSU plans to bring pro-life speakers Rebecca Kiessling and David Bereit to campus to speak in the spring of 2017, and it intends to apply for a Diversity Grant to defray the costs of hosting these speakers.

168.  Pursuant to the Student Fee Policy and the Diversity Grant Policy, Defendants will deny Students for Life at CSU's request for a Diversity Grant to bring Rebecca Kiessling and David Bereit to speak on campus because they are likely to conclude that the content of their speeches is not entirely unbiased as it addresses the topic of abortion and students from varying sides of the issue will not necessarily feel affirmed in attending the event.

169.  Pursuant to the Student Fee Policy and the Diversity Grant Policy, Defendants possess unbridled discretion in evaluating Students for Life at CSU's future applications for a Diversity Grant and Defendants possess the authority to deny the applications based upon the content and viewpoint of Students for Life at CSU's speech.

### ALLEGATIONS OF LAW

170.  All of the acts of Defendants, their officers, agents, employees, and servants, were executed and are continuing to be executed by the Defendants under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of Colorado.

171.  The LSC Diversity Grant Committee acts under color of state law when carrying out its duties and functions delegated to it by the Defendants pursuant to the Student Fee Policy and Diversity Grant Policy with respect to allowing student organizations to participate in the Diversity Grant Forum and with respect to allocating student activity fee money.

172. Defendants are not engaging in government speech in their allocation of Diversity Grants to student organizations and in their decision as to what student organizations will be allowed to participate in the Diversity Grant Speech Forum.

173. Upon information and belief, the Diversity Grant Committee has allocated or would allocate Diversity Grants to a variety of different groups whose views conflict with one another, including groups whose events would represent conflicting viewpoints on the same topic.

174. Defendants knew or should have known that by forcing Ms. Faulkner and the other members of Students for Life at CSU to pay into a viewpoint discriminatory student fee system and by denying Students for Life at CSU's application for a Diversity Grant due to the content and viewpoint of its guest speaker's expression, Defendants violated Plaintiffs' constitutional rights.

175. The Student Fee Policy and Diversity Grant Policy which Defendants applied to violate Plaintiffs' constitutional rights remain in full force and effect.

176. Plaintiffs are suffering irreparable harm from the Student Fee Policy and Diversity Grant Policy and conduct of Defendants, which cannot be fully compensated by an award of money damages.

177. Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights by Defendants.

178. Defendants' actions and policies, as set forth above, do not serve any legitimate or compelling state interest.

179. Defendants have deprived, and continue to deprive, Plaintiffs of their clearly established rights under the United States Constitution, as set forth in the causes of action below.

180. Unless the conduct of Defendants is enjoined, Plaintiffs will continue to suffer irreparable injury.

181. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to appropriate relief invalidating Defendants' Student Fee Policy and Diversity Grant Policy, along with the related practices and procedures.

**FIRST CAUSE OF ACTION**
**Violation of Plaintiff Students for Life at CSU's First Amendment**
**Right to Freedom of Speech**
**Content & Viewpoint Discrimination**

182. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-181 of this Complaint.

183. The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits content and viewpoint discrimination by a public university in its allocation of resources to student organizations, including those derived from mandatory student fee funding.

184. The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits viewpoint discrimination in a public forum created for student speech.

185. When a public university collects mandatory student fees and allows registered student organizations to apply for student fee funding, or otherwise makes funds available to student groups to foster a diversity of viewpoints, it creates a public forum for student speech and expression.

186. The government is not speaking when it allows registered student organizations promoting a multiplicity of views to apply for funding, whether through student fees or otherwise. Instead, it creates a public forum for student speech and expression.

187. The funds that a public university collects through a mandatory student fee and uses to fund student organizations do not constitute government funds.

188. The government's ability to restrict speech in a public forum is limited.

189. The use of mandatory student fees or other funds, to promote a variety of views by student organizations is a form of protected speech.

190. A public university may not apply content-based or viewpoint-based standards in allocating student organization funding, including through mandatory student fees.

191. The Diversity Grant Speech Forum is a public forum for student speech.

192. The Diversity Grant Policy's restrictions on funding speech on the topic of abortion because some might perceive it as not "unbiased" or because it might not make all listeners feel "affirmed" is content- and viewpoint-discriminatory.

193. Defendants' restrictions on speech in the Diversity Grant Policy are not content- or viewpoint-neutral.

194. The Diversity Grant Policy's prohibitions on funding speech that is not "unbiased" or that does not make all listeners feel "affirmed" fails to satisfy strict scrutiny because it is not narrowly tailored to promote a compelling government interest.

195. The Diversity Grant Policy's prohibitions on funding speech that is not "unbiased" or that does not make all listeners feel "affirmed" unconstitutionally restricts speech based on viewpoint and is not reasonable.

31

196.  The lack of objective criteria, factors, or standards for determining who may access a student organization funding forum gives government officials unbridled discretion to exclude or prohibit speech based on its content or viewpoint in violation of the First Amendment.

197.  The Diversity Grant Policy does not contain any definitions or objective standards to guide the LSC Diversity Grant Committee in determining whether a particular program "will enhance the educational and cultural aspects of the CSU community and/or raise awareness of differing perspectives."

198.  The lack of a process to remove officials who violate viewpoint neutrality when deciding student organization funding requests indicates that the government has unbridled discretion to govern the speech forum.

199.  The lack of advanced notice for meetings, public meetings, and recording of meetings of government officials charged with allocating student organization funding indicates that the government has unbridled discretion to govern the speech forum.

200.  The lack of an appeal process in a student organization funding forum indicates that the government has unbridled discretion to govern the speech forum.

201.  Defendants' policies governing the allocation of funds, including the Student Fee Policy and Diversity Grant Policy, confer unbridled discretion on Defendants or other government officials charged with allocating those funds to suppress and/or discriminate against disfavored speech content or viewpoints.

202.  Defendants' policies governing the allocation of funds, including the Student Fee Policy and Diversity Grant Policy, do not provide a process through which Defendants or other

government officials may remove a Diversity Grant Committee member for violating the constitutional prohibition against viewpoint discrimination.

203. Defendants' policies governing the allocation of funds, including the Student Fee Policy and Diversity Grant Policy, do not provide that Diversity Grant Committee meetings be announced in advance to the public, be open to the public, or be recorded.

204. Defendants' policies governing the allocation of funds, including the Student Fee Policy and Diversity Grant Policy, do not provide student organizations with the ability to appeal student organization funding decisions by the Diversity Grant Committee.

205. Pursuant to the Student Fee Policy and Diversity Grant Policy, Defendants engaged in content- and viewpoint-based discrimination by funding expressive activities of other student organizations at the University, but not Plaintiff.

206. Defendants applied the Student Fee Policy and Diversity Grant Policy, and procedures, practices, and customs to Plaintiff in a discriminatory manner by providing funding to other student organizations to speak on certain topics but denying funding to Plaintiff to speak on the same or similar topics.

207. Defendants have no legitimate interest to support by denying a Diversity Grant to speech that they subjectively believe to be "biased."

208. Accordingly, Defendants' Student Fee Policy, Diversity Grant Policy, and their enforcement of those policies against Plaintiff violate Plaintiff's right to freedom of speech guaranteed by the First Amendment.

209.  Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm.  Plaintiff is entitled to an award of monetary damages and equitable relief.

210.  Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its First Amendment right to freedom of speech and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

### SECOND CAUSE OF ACTION
**Violation of Plaintiffs' First Amendment Right to Freedom of Speech
Compelled Speech**

211.  Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1–181 of this Complaint.

212.  The First Amendment's Freedom of Speech Clause prohibits the government from compelling citizens to express or support a message not of their own choosing.

213.  The First Amendment's Freedom of Speech Clause prohibits public universities from collecting a mandatory student fee that is used to fund student organization speech, if that mandatory student fee is not allocated in a viewpoint neutral manner.

214.  Through the Student Fee Policy, the Board Defendants compel Plaintiff Emily Faulkner, the other members of Plaintiff Students for Life at CSU, and all University students to pay a mandatory student fee that is used in part to fund student organization speech on campus pursuant to a Policy which is not viewpoint neutral.

215.  Defendants' policies governing the allocation of mandatory student fees, including the Student Fee Policy and Diversity Grant Policy, confer unbridled discretion on Defendants or other government officials charged with allocating those funds to suppress and/or discriminate against disfavored speech based on content or viewpoint.

216.  The lack of objective criteria, factors, or standards for determining who may access a student organization funding forum gives government officials unbridled discretion to exclude or prohibit speech based on its content or viewpoint in violation of the First Amendment.

217.  The lack of a process to remove officials who violate viewpoint neutrality when deciding student organization funding requests indicates that the government has unbridled discretion to govern the speech forum.

218.  The lack of advanced notice for meetings, public meetings, and recording of meetings of government officials charged with allocating student organization funding indicates that the government has unbridled discretion to govern the speech forum.

219.  The lack of an appeal process in a student organization funding forum indicates that the government has unbridled discretion to govern the speech forum.

220.  Defendants' policies governing the allocation of funds, including the Student Fee Policy and Diversity Grant Policy, confer unbridled discretion on Defendants or other government officials charged with allocating those funds to suppress and/or discriminate against disfavored speech content or viewpoints.

221.  Defendants' policies governing the allocation of funds, including the Student Fee Policy and Diversity Grant Policy, do not provide a process through which Defendants or other

government officials may remove a Diversity Grant Committee member for violating the constitutional prohibition against viewpoint discrimination.

222. Defendants' policies governing the allocation of funds, including the Student Fee Policy and Diversity Grant Policy, do not provide that Diversity Grant Committee meetings be announced in advance to the public, be open to the public, or be recorded.

223. Defendants' policies governing the allocation of funds, including the Student Fee Policy and Diversity Grant Policy, do not provide student organizations with the ability to appeal student organization funding decisions by the Diversity Grant Committee.

224. Defendants John/Jane Does 1–6 and Defendant Allen have exercised the unbridled discretion granted by the remaining Defendants through the challenged policies to deny Plaintiff Students for Life at CSU the opportunity to receive student activity funds because they deemed its speech not to be "unbiased," but they still force students, including Plaintiff Faulkner and members of Plaintiff Students for Life at CSU, to support other student organization speech, including that which is "biased", through the mandatory student fee.

225. Defendants John/Jane Does 1–6 and Defendant Allen have exercised the unbridled discretion granted by the remaining Defendants through the challenged policies to deny Plaintiff Students for Life at CSU the opportunity to receive student activity funds because they deemed its speech would not make all students feel "affirmed," but they still force students, including Plaintiff Faulkner and members of Plaintiff Students for Life at CSU, to support other student organization speech, including that which does not make all students feel "affirmed", through the mandatory student fee.

36

226. Defendants' Student Fee Policy and Diversity Grant Policy compel Plaintiff Faulkner and the student members of Plaintiff Students for Life at CSU to fund and support speech and viewpoints with which they disagree and which they find offensive and objectionable.

227. Defendants' Student Fee Policy and Diversity Grant Policy permit content- and viewpoint- discrimination in the allocation of student fees because it grants unbridled discretion to University administrators.

228. Accordingly, Defendants' Student Fee Policy and Diversity Grant Policy, and their enforcement of those policies against Plaintiffs, violate Plaintiffs' right to freedom of speech guaranteed by the First Amendment.

229. Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. They are entitled to an award of monetary damages and equitable relief.

230. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their First Amendment right to freedom of speech and an injunction against Defendants' policy and actions. Additionally, Plaintiffs are entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
**Violation of Plaintiff Students for Life at CSU's
Fourteenth Amendment Right to Due Process of Law**

231. Plaintiff Students for Life at CSU repeats and realleges each of the allegations contained in paragraphs 1-181 of this Complaint.

37

232. The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the right to due process of law and prohibits Defendants from promulgating and employing vague standards that allow for viewpoint discrimination in Defendants' handling of Plaintiff's application for student fee funding support.

233. The government may not regulate speech based on policies that permit arbitrary, discriminatory, and overzealous enforcement.

234. The government may not regulate speech based on policies that cause persons of common intelligence to guess at their meaning and differ as to their application.

235. The government may not regulate speech based on policies that do not provide persons of common intelligence fair warning as to what speech is permitted and what speech is prohibited.

236. Defendants' Student Fee Policy, Diversity Grant Policy, and their procedures, practices, and customs contain open-ended criteria for the LSC Diversity Grant Committee to use when deciding whether to allocate money to a student organization.

237. Defendants' Student Fee Policy, Diversity Grant Policy, and their procedures, practices, and customs are impermissibly vague and ambiguous and are thus incapable of providing meaningful guidance to Defendants.

238. The Diversity Grant Policy is impermissibly vague and ambiguous because it prohibits speech that is "biased" but does not provide any definition of "biased" or any objective criteria upon which to make this determination.

239. The Diversity Grant Policy is impermissibly vague and ambiguous because it prohibits speech that does not make all listeners "feel affirmed" but does not provide any definition of "affirmed" or any objective criteria upon which to make this determination.

38

240.  The vague and ambiguous standards in Defendants' Student Fee Policy, Diversity Grant Policy, and their procedures, practices, and customs gives government officials unbridled discretion to exclude or prohibit speech based on its content or viewpoint in violation of Plaintiff's right to due process of law under the Fourteenth Amendment.

241.  Defendants' Student Fee Policy, Diversity Grant Policy, and their procedures, practices, and customs give unbridled discretion to Defendants to support favored speech and to suppress and/or discriminate against disfavored speech content or viewpoints.

242. Pursuant to the Student Fee Policy and Diversity Grant Policy, Defendants granted mandatory student fee funding to other student organizations for events advocating for viewpoints on political, ideological, and social issues, but denied the same funding to Plaintiff for its speech by Mr. Brahm, which also addressed political and social issues.

243.  Defendants applied the Student Fee Policy, Diversity Grant Policy, and their procedures, practices, and customs to Plaintiff in *ad hoc*, discriminatory ways based on the content and viewpoint of its speech, in violation of its right of due process of law under the Fourteenth Amendment.

244.  Because of Defendants' actions pursuant to the Student Fee Policy and Diversity Grant Policy, Plaintiff Students for Life at CSU has suffered, and continues to suffer, economic injury and irreparable harm. Plaintiff is entitled to an award of monetary damages and equitable relief.

245. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its Fourteenth Amendment right to due process of law and an injunction against Defendants' Student Fee Policy and Diversity Grant Policy and actions. Additionally,

39

Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

<u>**FOURTH CAUSE OF ACTION**</u>
**Violation of Plaintiff Students for Life at CSU's**
**Fourteenth Amendment Right to Equal Protection of the Law**

246.  Plaintiff Students for Life at CSU repeats and realleges each of the allegations contained in paragraphs 1–181 of this Complaint.

247.  The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the equal protection of the laws, which prohibits Defendants from treating Plaintiff differently than similarly situated student organizations.

248.  The government may not treat someone disparately as compared to similarly situated persons when such disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis.

249.  Plaintiff is similarly situated to other recognized student organizations at the University.

250.  Pursuant to the Student Fee Policy and Diversity Grant Policy, Defendants granted mandatory student fee funding to other similar student organizations, but denied the same to Plaintiff.

251.  Pursuant to the Student Fee Policy and Diversity Grant Policy, Defendants granted mandatory student fee funding to other students organizations for events advocating viewpoints on political, ideological, and social issues, but denied the same funding to Plaintiff for its speech by Mr. Brahm, which focused on political and social issues.

252. Pursuant to the Student Fee Policy and Diversity Grant Policy, Defendants treated Plaintiff disparately when compared to similarly situated student organizations by denying Plaintiff student fee funding.

253. Defendants' Student Fee Policy and Diversity Grant Policy and related practices violate various fundamental rights of Plaintiff, such as its freedom of speech and due process of law.

254. When government regulations, like Defendants' mandatory student fee funding policy and practices challenged herein, infringe on fundamental rights, discriminatory intent is presumed.

255. Defendants' mandatory student fee funding policy and practices have also been applied to discriminate intentionally against Plaintiff's rights to freedom of speech and due process of law.

256. Defendants lack a rational or compelling state interest for such disparate treatment of Plaintiff.

257. Defendants' Student Fee Policy, Diversity Grant Policy, and their practices are not narrowly tailored as applied to Plaintiff because Plaintiff's speech does not implicate any of the interests Defendants' might have.

258. Defendants have applied the Student Fee Policy, Diversity Grant Policy, and their procedures, practices, and customs to Plaintiff in a discriminatory and unequal manner, allowing other student organizations to receive funding to speak on topics that Defendants say Plaintiff cannot receive funding to speak on, in violation of Plaintiff's right to equal protection of the laws under the Fourteenth Amendment.

259. Because of Defendants' actions pursuant to the Student Fee Policy and Diversity Grant Policy, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. It is entitled to an award of monetary damages and equitable relief.

260. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to a declaration that Defendants violated its Fourteenth Amendment right to equal protection of law and an injunction against Defendants' Student Fee Policy and Diversity Grant Policy and actions. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including its reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants and provide Plaintiffs with the following relief:

A.  A declaratory judgment that the Defendants' Student Fee Policy and Diversity Grant Policy, facially and as-applied, violate Plaintiffs' rights under the First and Fourteenth Amendment;

B.  A declaratory judgment that the Defendants' denial of student fee funding to Plaintiff Students for Life at CSU violated Plaintiffs' rights under the First and Fourteenth Amendments;

C.  A preliminary and permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing the Student Fee Policy and Diversity Grant Policy challenged in this complaint;

D.  Actual compensatory damages in the amount of $600.00 for infringing Plaintiff's exercise of its First and Fourteenth Amendment rights;

E.  Actual compensatory damages in the amount of mandatory student fees paid by each of Plaintiff Students for Life at CSU's student members, including Plaintiff Faulkner, that

42

was collected pursuant to a content- and viewpoint-based policy that infringed Plaintiffs' First Amendment rights;

F.   Nominal damages for the violation of Plaintiffs' First and Fourteenth Amendment rights;

G.   Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

H.   All other further relief to which Plaintiffs may be entitled.

Respectfully submitted this 17th day of January 2017,

BARRY ARRINGTON
**ARRINGTON LAW FIRM**
3801 East Florida Avenue, Suite 830
Denver, Colorado 80210
Telephone:  (303) 205–7870
Facsimile:  (303) 463–0410
barry@arringtonpc.com


DAVID A. CORTMAN
Georgia Bar No. 188810
TRAVIS C. BARHAM
Georgia Bar No. 753251
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road NE
Suite D-1100
Lawrenceville, Georgia 30043
Telephone:  (770) 339–0774
Facsimile:  (770) 339–6744
dcortman@ADFlegal.org
tbarham@ADFlegal.org

*s/ Tyson C. Langhofer*

TYSON C. LANGHOFER
Arizona Bar No. 032589
**ALLIANCE DEFENDING FREEDOM**
15100 North 90th St.
Scottsdale, Arizona 85260
Telephone:  (480) 444–0020
Facsimile:  (480) 444–0028
tlanghofer@ADFlegal.org


M. CASEY MATTOX
Virginia Bar No. 47148
**ALLIANCE DEFENDING FREEDOM**
440 First Street, NW, Suite 600
Washington, D.C. 20001
Telephone:  (202) 393–8690
Facsimile:  (202) 347–3622
cmattox@ADFlegal.org

*Attorneys for Plaintiffs*

## DECLARATION UNDER PENALTY OF PERJURY

I, EMILY FAULKNER, a citizen of the United States and a resident of the State of Colorado, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, except as to statements made on information and belief, and those I believe to be true and correct.

Executed this 12 day of January, 2017, at Fort Collins, Colorado.

*Emily Faulkner*

EMILY FAULKNER
President
Students for Life at Colorado State University

44

**DECLARATION UNDER PENALTY OF PERJURY**

I, EMILY FAULKNER, a citizen of the United States and a resident of the State of Colorado, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, except as to statements made on information and belief, and those I believe to be true and correct.

Executed this 12 day of January, 2017, at Fort Collins, Colorado.

Emily Faulkner

EMILY FAULKNER

45